IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| YE MING HUANG,<br>*Plaintiff* | :<br>:<br>: | CIVIL ACTION |
| v. | :<br>: | |
| BAI WEI LLC,<br>*Defendant* | :<br>:<br>: | No. 22-3618 |

**MEMORANDUM**

PRATTER, J.                                                                             AUGUST 14th, 2023

  Ye Ming Huang claims that Bai Wei, LLC, which owned the restaurant where he worked, underpaid him and his co-workers. Individually and on behalf of others similarly situated, Mr. Huang claims that Bai Wei violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the "FLSA"), and the Pennsylvania Minimum Wage Act, 43 Pa. Cons. Stat. § 331.101 *et seq.*, by failing to pay their employees overtime. Mr. Huang has filed a motion for conditional collective certification under 29 U.S.C. § 216(b). Bai Wei has submitted briefing in opposition to Mr. Huang's motion, and the motion is ripe for decision. The Court will deny the motion for conditional collective certification, without prejudice, for the reasons set forth below.

BACKGROUND

  Ye Ming Huang worked as a chef at a restaurant in Philadelphia's Chinatown neighborhood from June 2018 to May 2021. In Mr. Huang's first few months on the job, the restaurant was known as Sakura Mandarin and was operated by Sakura Mandarin, Inc. By August 2018, however, after Sakura Mandarin's owners shuttered the business for renovations, the restaurant was rechristened Bai Wei and began to operate under a newly formed limited liability company, Bai Wei, LLC, which is organized under the laws of, and has a principal place of business in, Pennsylvania.

According to Mr. Huang's complaint, he worked about 70 hours a week at the restaurant and made a flat rate of about $4,000 to $4,400 per month. He did not have fixed breaks or set mealtimes. When he did get a break, it could be cut short at any time if a customer ordered food. He was never given an hourly pay rate, nor told of tip deductions toward his wages. He alleges that he never received a pay stub. Mr. Huang claims that he and other current and former non-exempt and non-managerial employees[1] who are or were employed by Bai Wei for the last three years were not properly compensated at one-and-one-half times their promised work for all hours worked in excess of 40 hours per week.[2]

This is the second of two related suits stemming from Mr. Huang's alleged mistreatment at the restaurant. Mr. Huang first filed suit against Sakura Mandarin, Inc.; its owners Jack and Anna Chen; the Chens' other restaurant-operating companies, Chili Bamboo LLC and Dessert Pop, Inc.; and Wen He Wang, a manager at Bai Wei (the "Initial Suit"). *See Huang v. Sakura Mandarin, Inc.*, No. 21-cv-3757, 2022 WL 2052646, at *1 (E.D. Pa. June 7, 2022). In the Initial Suit, this Court dismissed Ms. Chen, Chili Bamboo LLC, and Dessert Pop, Inc. as defendants, *id.* at *6, and denied Mr. Huang's motion for conditional collective certification without prejudice, finding that Mr. Huang had provided insufficient information to meet his burden. *Huang v. Sakura Mandarin, Inc.*, No. 21-cv-3757, 2022 WL 4585533, at *3–*5 (E.D. Pa. Sept. 29, 2022).

---

[1] As of this date, no other current or former employees of Bai Wei appear to have opted in to this lawsuit as plaintiffs.

[2] In both the Complaint and his motion for conditional collective certification, Mr. Huang suggests that Bai Wei has also engaged in a minimum wage violation. *See* Compl. ¶¶ 2, 28; Memo. in Support of Mot. for Conditional Collective Cert. at 5, 16. Nevertheless, as the statement of claims within the Complaint focuses solely on overtime violations, the Court will not consider any allegations of minimum wage violations at this time. Compl. ¶¶ 48–61.

Shortly after that adverse ruling, Mr. Huang filed this suit against Bai Wei,[3] alleging that Bai Wei (1) violated the FLSA's overtime provision, 29 U.S.C. § 207(a) and (2) violated the overtime provisions of the Pennsylvania Minimum Wage Act, 43 Pa. Cons. Stat. §§ 333.105(a)–(c). Now, Mr. Huang again moves for conditional certification of an FLSA collective action, which he appears to define as

> ALL current and former non-exempt and non-managerial employees employed at any time from September 9, 2019 (three years prior to the filing of the Complaint) to the date when the Court so-orders the Notice of Pendency and Consent to Join Form or the date when Defendants provide the name list, whichever is later.[4]

Mot. for Conditional Collective Certification ¶ 2. Mr. Huang also moves the Court to order Bai Wei to produce the names, last known address, telephone numbers, email addresses, WhatsApp, WeChat ID and Facebook usernames, work locations, dates of employment, and positions of its non-exempt and non-managerial employees in the past three years. And he asks the Court to order that the opt-in notice of this collective action be disseminated to the individuals named by Bai Wei. In support of his motion, Mr. Huang presents (1) his affidavit submitted in connection with the motion for conditional collective certification in the Initial Lawsuit, (2) his supplemental affidavit, (3) two purported work schedules for the restaurant, and (4) what Mr. Huang claims are his pay records. Bai Wei, in its opposition to the motion, argues that Mr. Huang has failed to offer sufficient evidence to meet his modest burden and that his newly submitted affidavit is merely a sham. The motion is now ripe for disposition.[5]

---

[3] Although Mr. Huang states in his Complaint that "[t]his matter ought to be consolidated with *Huang v. Sakura Mandarin, Inc*, No. 21-cv-3757," Compl. ¶ 24, he has yet to file a motion to consolidate with the Court.

[4] The Court notes that Mr. Huang fails to limit this collective action to employees employed by Bai Wei, specifically.

[5] The Court decides this motion without oral argument. Fed. R. Civ. P. 78(b).

3

## LEGAL STANDARDS

"The FLSA establishes federal . . . overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013). Under § 7 of the FLSA, nonexempt employees working over 40 hours a week must receive compensation at a rate of at least one-and-one-half times his or her regular rate for hours worked above that threshold. 29 U.S.C. § 207(a)(1); *see also id.* § 213(a) (setting forth exemptions to overtime provisions). An employee may bring an FLSA collective action on "behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b); *see also Genesis*, 569 U.S. at 69. Such collective actions provide the benefit of "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Collective actions differ from Rule 23 class actions because potential plaintiffs must *opt in* to join a suit proceeding under § 216(b). 29 U.S.C. § 216(b); *see also Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 242–43 (3d Cir. 2013).

"[D]istrict courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs," which "serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." *Hoffman-La Roche*, 493 U.S. at 169, 172. Preliminary certification of a collective action permitting notice "is neither necessary nor sufficient for the existence of a representative action under FLSA." *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 194 (3d Cir. 2011), *rev'd on other grounds*, *Genesis*, 569 U.S. 66.

In the Third Circuit, courts follow a two-step path to collective actions. *Camesi*, 729 F.3d at 243. First, the Court conditionally certifies the action once the named plaintiff has made "a modest factual showing—something beyond mere speculation—to demonstrate a factual nexus

4

between the manner in which the employer's alleged policy affected him . . . and the manner in which it affected the proposed collective action members." *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016) (internal quotation marks omitted). The proposed collective action members then receive notice of the action and have the chance to opt in. *Id.* Discovery carries on, with a focus on the new opt-in plaintiffs. *Id.* at 225–26. "At the step-one inquiry, the Court does not weigh the evidence, resolve factual disputes, or reach the merits of Plaintiff's claims. . . . The Court does not, however, review Plaintiff's evidence in a vacuum. It reviews Plaintiff's evidence in light of the evidence submitted by Defendants." *Reed v. Empire Auto Parts, Inc.*, No. 13-cv-5220, 2015 WL 761894, at *3 (D.N.J. Feb. 23, 2015).

Despite being fairly lenient, the modest factual showing standard "does not compel automatic certification at the notice stage." *Mitchell v. Covance, Inc.*, 438 F. Supp. 3d 341, 346 (E.D. Pa. 2020). Instead, the standard informs the district court's ability to "ascertain[] the contours of the action at the outset" and avoid "excessive litigation spawned by plaintiffs lacking a personal interest in the outcome" of a case. *Hoffman-La Roche*, 493 U.S. at 171–73. So, at the first step, the Court is cast "in the role of gatekeeper," "screen[ing] at this early stage overly burdensome litigation" and "ensur[ing] that the notice to be sent out to the putative collective members contains accurate information and is not a naked solicitation of claims." *Mitchell*, 439 F. Supp. 3d at 346; *see also Smith v. Sovereign Bancorp, Inc.*, No. 03-cv-2420, 2003 WL 22701017, at *2–*3 (E.D. Pa. Nov. 13, 2003) (denying motion for preliminary collective certification where grant would result in "an inefficient and overbroad application of the opt-in system, and . . . a substantial and expensive burden on a defendant to provide names and addresses of thousands of employees who would clearly be established as outside the class if the plaintiff were to conduct even minimal class-related discovery").

In the second step of the collective certification process—*i.e.*, final certification—once all the opt-in plaintiffs are identified, the Court considers all the evidence to determine whether the opt-in plaintiffs are actually similarly situated to the named plaintiff. *Halle*, 842 F.3d at 226. "This step may be triggered by the plaintiffs' motion for 'final certification,' by the defendants' motion for 'decertification,' or, commonly, by both." *Camesi*, 729 F.3d at 243. While in the initial step the Court decides whether similarly situated plaintiffs actually exist, in the second step the Court must determine whether the opting in plaintiffs are in fact similarly situated to the named plaintiffs. *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 n.4 (3d Cir. 2012). The named plaintiffs must prove this by a preponderance of the evidence in the final certification stage. *Halle*, 842 F.3d at 226.

## DISCUSSION

### I. The Motion to Certify Violates Rule 11

Federal Rule of Civil Procedure 11 mandates that "[e]very pleading, written motion, and other paper must be signed by at least one *attorney of record* in the attorney's name." Fed. R. Civ. P. 11(a) (emphasis added). "The Court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention." *Id.*

Because Mr. Huang's motion and accompanying filings do not include the signature of an attorney of record, they fail to comply with Rule 11. Attorney Aaron Schweitzer's signature appears on Mr. Huang's "Notice of Plaintiffs' Motion for Conditional Collective Certification," the "Declaration of Aaron Schweitzer in Support of Plaintiffs' Motion for Conditional Collective Certification," and the "Memorandum of Law in Support of Plaintiff's Moiton [sic] for (1) Conditional Certification Pursuant to the Fair Labor Standards Act, (2) Court-Authorized Notice to Similarly Situated Individuals; and (3) Disclosure of Contact Information for Notice to Potential Opt-Ins." In each filing, Mr. Schweitzer erroneously claims to be admitted *pro hac vice*. While

6

Mr. Schweitzer was admitted *pro hac vice* in the Initial Suit, the docket does not reflect that any admitted counsel moved for the *pro hac vice* admission of Mr. Schweitzer in Mr. Huang's case filed against Bai Wei. The Local Rules of Civil Procedure dictate that "any attorney who is not a member of the bar of this court shall, *in each proceeding* in which that attorney desires to appear, have as associate counsel of record a member of the bar of this court." E.D. Pa. Civ. R. 83.5.2(a). "An attorney who is not a member of the bar of this Court shall not actively participate in the conduct of any . . . pre-trial . . . proceeding before this Court unless, upon motion of a member of the bar of this Court containing a verified application, leave to do so shall have been granted." E.D. Pa. Civ. R. 83.5.2(b).

Although Bai Wei's response to the instant motion should have put Mr. Huang's attorneys on notice that the motion to certify is unsigned for purposes of Rule 11, the Court now formally calls to the attorneys' attention the deficiency of the filings. Fed. R. Civ. P. 11(a). Therefore, Mr. Huang's attorneys of record shall move for Mr. Schweitzer's *pro hac vice* admission—in conformance with this Court's policies and procedures—promptly after the issuance of this Memorandum, or the attorneys of records shall withdraw the instant motion and resubmit it with the signature of a properly admitted attorney. In the event Mr. Huang's attorneys of record fail to do so, the deficient motions and other papers will be stricken. Fed. R. Civ. P. 11(a).[6]

---

[6] "The purpose of requiring an attorney to be authorized to practice in a particular court is not to benefit lawyers who are duly authorized, but to protect citizens and litigants against mistakes of the ignorant on the one hand and machinations of unscrupulous persons on the other." *Matter of Fleischer*, 9 F.3d 107 (Table), No. 92-2220, 1993 WL 337741, at *3 (6th Cir. Aug. 31, 1993). While this Memorandum primarily focuses on the legal substance of Mr. Huang's motion for conditional collective certification, the Court is well aware of the significant typographical, grammatical, and procedural mistakes contained in the filings submitted by Mr. Huang's attorneys, which at best show negligence on the part of officers of the court and at worst could be taken as evidence of unscrupulousness. The Court once again reminds plaintiff's counsel of their continuing ethical and professional duties to Mr. Huang under the Pennsylvania Rules of Professional Conduct. *See Huang*, 2022 WL 4585533, at *4 n.4.

## II. The Motion to Certify Fails to Make the Required Modest Factual Showing

Mr. Huang is the sole named plaintiff in this case, and he seeks to conditionally certify a collective of all current and former non-exempt and non-managerial employees employed by Bai Wei at any time in the three years prior to the date his complaint was filed. Mr. Huang's motion implicates only the first step of the collective action certification process, so Mr. Huang must make a "modest factual showing" that he and his co-workers at Bai Wei were similarly situated. *Halle*, 842 F.3d at 224. To be similarly situated, employees must be "subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA." *Id.* at 226.

Mr. Huang claims that he and other employees at Bai Wei regularly worked similar hours each week for similar pay. He and his co-workers never received overtime pay. Nor, according to Mr. Huang, did Bai Wei keep records or pay its workers except in cash.

These could count as potential common employer practices in violation of the FLSA. If an employee works more than 40 hours in a week, he must receive overtime pay of one-and-one-half times his hourly salary. 29 U.S.C. § 207(a)(1). And restaurants must keep records of the employee's hours worked (including all overtime hours) and wages paid and deductions taken. 29 U.S.C. § 211(c); 29 C.F.R. § 825.500(c).

But whether Mr. Huang has made the modest factual showing that he and other Bai Wei employees are similarly situated is a different question—the critical question at this juncture of the collective certification process. The Court now considers the four pieces of evidence that Mr. Huang has submitted in support of his motion.

### A. Mr. Huang's Initial Affidavit

Mr. Huang resubmits his affidavit from the Initial Lawsuit identifying eight other employees, all of whom are alleged to have worked similar hours as Mr. Huang and other kitchen

8

staff, and four of whom are alleged to have received similar pay as Mr. Huang. He claims he knows that the other employees also worked 70 or more hours a week because he and the others "would arrive and leave at the same time." Huang Initial Aff. ("Initial Aff.") ¶ 31. And he avers, without significant detail, that he knows how much the others were paid because he and the others "talked about how much everyone got paid." Initial Aff. ¶ 32. As the Court acknowledged in the Initial Suit, the initial affidavit takes an incremental step towards the required proof. *Huang*, 2022 WL 4585533, at *3.

But for the reasons set forth in the Court's denial of conditional class certification in the Initial Suit, Mr. Huang's initial affidavit is not enough, on its own, to make the "modest factual showing" required here. *See id.* at *3–*5. The Court need not rearticulate the defects it identified in Mr. Huang's initial affidavit now, but instead will focus on whether he has cured those deficiencies with the additional evidence he submitted to support the current motion.

### B. Mr. Huang's Supplemental Affidavit

Mr. Huang submits a supplemental affidavit in an attempt to bolster his motion. But the supplemental affidavit does not cure the deficiencies in the initial affidavit, instead presenting even more problems than those associated with the initial affidavit.

#### 1. The Supplemental Affidavit Is an Uncertified Translation

Mr. Huang's supplemental affidavit is patently deficient. The supplemental affidavit ends with a declaration that states

> I told Tiffany Troy what to write in my affidavit on February 10, 2023 in Mandarin Chinese language. Tiffany Troy wrote down what I said in English. Tiffany Troy then translated the English affidavit back to me in Mandarin Chinese language. I told Tiffany Troy that I fully comprehend the contents of the document. I have signed it as it was translated to me in Mandarin Chinese language.

Huang Suppl. Aff. ("Suppl. Aff.") at 10. Bai Wei notes that Ms. Troy is Mr. Huang's attorney of record, and there is no indication on the affidavit that she is a certified translator, nor has she herself represented that her translation is true and accurate.

"[O]nly admissible evidence may be considered in deciding a motion for conditional class certification under 29 U.S.C. § 216(b) of the FLSA." *Stanislaw v. Erie Indem. Co.*, No. 07-cv-1078, 2009 WL 426641, at *2 (W.D. Pa. Feb. 20, 2009). Where a declarant, like Mr. Huang, "does not speak and read English . . . the party relying on his English-language declaration must also submit documents sufficient to establish that he understood what he was signing." *Sicom S.P.A. v. TRS Inc.*, 168 F. Supp. 3d 698, 709 (S.D.N.Y. 2016).[7] Such comprehension can be shown in several ways. *Heredia v. Americare, Inc.*, No. 17-cv-6219, 2020 WL 3961618, at *4 (S.D.N.Y. July 13, 2020). The declarant can read a certified translation in his native language before signing the certified English-language version. *See, e.g., Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 118 (S.D.N.Y. 2011). He may also sign the native-language version of his declaration before the declaration is translated into English. *See Mattis v. Zheng*, No. 05-cv-2924, 2006 WL 3155843, at *1 n.1 (S.D.N.Y. Oct. 27, 2006). Or the declarant may sign a separate declaration indicating that the document had been properly translated, provided there is no reason to suspect that the declarant

---

[7] A not-insignificant body of caselaw in the U.S. District Court for the Southern District of New York appears to have sprung up around the repeated failure of the law firm representing Mr. Huang—Troy Law, PLLC—to provide translations of submitted evidence in lawsuits brought on behalf of other clients. *See, e.g., Tangtiwatanapaibul v. Tom & Toon Inc.*, No. 17-cv-816, 2018 WL 4405606, at *3 (S.D.N.Y. Sept. 17, 2018) ("Plaintiffs failed to provide proper certification by a translator of [one plaintiff's] allegations of Defendants' improper conduct."); *Lijun Geng v. Shu Han Ju Rest. II Corp.*, No. 18-cv-12220, 2019 WL 4493429, at *16 (S.D.N.Y. Sept. 9, 2019) (overlooking "technical improprieties" where plaintiffs did not submit their affidavits "in the affiants' native languages, [but where] the Affidavits [we]re signed by the affiants and were sworn before a notary public"); *Jianjun Chen v. 2425 Broadway Chao Rest., LLC*, No. 16-cv-5735, 2019 WL 1244291, at *15, *15 n.10 (S.D.N.Y. Mar. 18, 2019) ("Exhibits 21 and 22 to [plaintiffs' counsel's] affidavit are untranslated-handwritten-Mandarin documents which the Court does not accept as evidence.").

did not understand the declaration or that his counsel acted improperly with regard to the declaration. *See Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628, 634 (S.D.N.Y. 2007).

"Absent one of those means of assurance that the declarant understood what he or she was signing, courts may strike the declaration." *Heredia*, 2020 WL 3961618, at *4. Mr. Huang's affidavit is not submitted in conjunction with a Mandarin Chinese translation, signed or unsigned. *See, e.g., Tom & Toon Inc.*, 2018 WL 4405606, at *3; *Mattis*, 2006 WL 3155843, at *1 n.1. Nor is the Court persuaded that Mr. Huang's counsel acted properly in acting simultaneously as attorney and translator for Mr. Huang, particularly where there is no indication that she is qualified as a Mandarin Chinese interpreter. *Cf.* Pa. R. Prof'l Conduct for Judiciary Interpreters 3 & cmt. ("Interpreters shall be impartial and unbiased and shall refrain from conduct that may give an appearance of bias or favoritism . . . . An interpreter who is also an attorney should not serve in both capacities in the same matter.").

Given that the Court struggles to find *any* indicia of reliability here, it will not turn a blind eye to the "technical improprieties" of the supplemental affidavit. *See Lijun Geng*, 2019 WL 4493429, at *16. Nevertheless, if the Court were to consider the merits of the claims made in the uncertified supplemental affidavit, the resulting ruling would be unchanged, for the reasons articulated below.[8]

### 2. The Supplemental Affidavit Does Not Make a Modest Factual Showing That There Are Similarly Situated Individuals

Turning to the substance of the supplemental affidavit, Mr. Huang claims that every worker at Bai Wei worked six days a week, that "everyone arrived at the same time and left at the same

---

[8] Having determined that the supplemental affidavit is most appropriately excluded as an uncertified translation, the Court does not consider whether the supplemental affidavit should also be stricken because it is a "sham affidavit," because Mr. Huang's signature appears different in the two proffered affidavits, or because the supplemental affidavit appears to have been signed outside of Mr. Huang's state of residence.

11

time," that "no one would ever leave early or take breaks during the day but would work throughout the day," and "all the workers of [Bai Wei] were compnesated [sic] the same way that I was." Suppl. Aff. ¶¶ 28–29, 39. Mr. Huang devotes the majority of his supplemental affidavit to describing, line by line, the Mandarin Chinese exhibit that he asserts are Bai Wei's work schedules.

But even reading the supplemental affidavit liberally, it does not show that other workers at Bai Wei are similarly situated to Mr. Huang. Although the supplemental affidavit provides the full names of at least a dozen members of the kitchen staff, Mr. Huang fails to specify these individuals' positions in the restaurant, or even to aver that they were non-exempt or non-managerial employees who could potentially fall within the proposed collective as Mr. Huang defines it. *See Xin Li v. Chinese Bodyworks, Inc.*, No. 18-cv-11277, 2020 WL 468344, at *3 (D.N.J. Jan. 27, 2020) (noting failure to specify roles in store in denying motion for collective certification). And while Mr. Huang states that he made personal observations as to how much time other employees worked in the restaurant on a weekly basis, the supplemental affidavit gives meager support as to whether Mr. Huang's co-workers received deficient pay for their time at the restaurant—indeed, the supplemental affidavit makes no mention of overtime compensation at all, and only in the most conclusory of statements remarks that all workers were compensated in the same manner as Mr. Huang. *See Mitchell*, 438 F. Supp. 3d at 346–47 (finding that the plaintiff's "conclusory statements, totally lacking in detail, that the assertions are based on numerous direct communications [she] had with other [employees in the same role] d[id] not provide evidence that [the plaintiff] ha[d] any personal knowledge that these individuals were subject to unfair payment of wages") (internal quotation marks omitted).[9] In short, Mr. Huang has not made sufficient

---

[9] That is not to say that Mr. Huang could have salvaged the supplemental affidavit by alleging statements that his erstwhile co-workers had made about their overtime compensation because "only admissible evidence may be considered in deciding a motion for conditional class certification"—so hearsay would not be considered in any event. *See Stanislaw*, 2009 WL 426641, at *2 (collecting cases);

statements in his supplemental affidavit that he has personal knowledge that other similarly situated employees of Bai Wei did not receive overtime compensation.

## C. <u>Bai Wei's Work Schedules</u>

Mr. Huang provides the Court with two charts, which Mr. Huang asserts are Bai Wei staffing schedules for the first two weeks of the months of May and September in an unspecified year. The value of these charts as evidence supportive of the present motion approaches zero. That is because the purported schedules are written in Mandarin Chinese, without translation by a qualified individual. *See Zavala v. Wal-Mart Stores, Inc.,* No. 03-cv-5309, 2008 WL 4513604, at *3 (D.N.J. Sept. 26, 2008) (declining to rely on incomplete and untranslated questionnaires submitted to the Court at the final certification stage); *Sicom S.P.A.*, 168 F. Supp. 3d at 709 ("[T]he parties . . . should bear in mind that foreign-language documents . . . cannot be reviewed or relied on by the Court, even if otherwise properly authenticated in the declaration to which they are attached, unless they are accompanied by certified translations in English."); *Jianjun Chen*, 2019 WL 1244291, at *15, *15 n.10 (refusing to accept as evidence, at the summary judgment stage, "untranslated-handwritten-Mandarin documents" where "[n]o translations of these documents, certified or otherwise, were submitted" and remarking that "counsel's lassitude in presenting such untranslated records to the Court is of considerable concern").

But even had these schedules been properly translated—rather than described by Mr. Huang in Mandarin Chinese and translated into English in his supplemental affidavit by his

---

*accord Kuznyetsov v. W. Penn Allegheny Health Sys., Inc.,* No. 09-cv-379, 2009 WL 1515175, at *3–*4 (W.D. Pa. June 1, 2009) ("Since the information contained in the affirmations relating to 'other employees' is not based on personal knowledge, the evidence is inadmissible hearsay. As a result, [the Court] will not consider the hearsay statements contained therein."); *Xin Li*, 2020 WL 468344, at *3 ("With respect to her knowledge about the specific compensation of the named co-workers, Plaintiff's allegations are similarly unpersuasive, because each contains the same sort of blanket assertion without factual support or is based on inadmissible hearsay.").

13

attorney—they would fail to independently establish that Mr. Huang's coworkers were similarly situated. While the schedules purport to show that kitchen staff at Bai Wei, like Mr. Huang, all worked six *days* a week, the schedules say nothing about whether the employees' *hours* worked exceeded 40, such that other Bai Wei employees might be entitled to recover overtime compensation under 29 U.S.C. § 207(a)(1).

### D. Mr. Huang's Pay Records

Mr. Huang also provides what he labels "pay records," which appear to be scans of bank envelopes containing his biweekly cash payments from Bai Wei and photographs of dollar bills, each with what appears to be notes in Mandarin Chinese affixed thereto. Again, rather than provide the Court with certified translations of these notes, Mr. Huang describes their meaning and Ms. Troy purportedly translates his assessment in the supplemental affidavit.

But, similar to the work schedules described above, even had these pay records been presented properly, they would not enlighten the Court as to whether other workers at Bai Wei are similarly situated to Mr. Huang. These are merely Mr. Huang's memorialization of how he *himself* was paid—he presents no record of how other kitchen or waitstaff at Bai Wei were paid.

Although the bar is low in a motion for conditional collective certification, it is not a meaningless or purposeless standard. Mr. Huang has not met his burden because his factual showing at this stage of the potential collective action is too modest by half, even were the Court to shut its eyes to the numerous failures which plague Mr. Huang's present motion.[10] Because he

---

[10] The failures to which the Court must shut its eyes include, *inter alia*, this Court's earlier ruling noting the ways in which Mr. Huang's motion for conditional collective certification fell short in the Initial Suit, *see Huang*, 2022 WL 4585533, at *3–*4; the fact that the present motion was submitted by an attorney who is not of record in this case and who has made no assurances to this Court of his compliance with all relevant rules of professional conduct in the present litigation; and the fact that the majority of evidence submitted in support of this motion has not been translated into English at all, or has been translated by Mr. Huang's attorney, who has not disclosed any credentials as an interpreter.

14

has not met his burden, grant of conditional collective certification is not appropriate, so the Court need not address either party's arguments as to the sufficiency or appropriateness of Mr. Huang's proposed notice. *See Xin Li*, 2020 WL 468344, at *1 n.3.

## CONCLUSION

For the foregoing reasons, the Court denies Mr. Huang's motion for conditional collective certification without prejudice.[11] An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[11] Although Mr. Huang has fallen far short of his relatively light burden again, "[a] denial at the conditional certification stage is not necessarily a final determination of whether the matter may proceed as a collective action. Some courts permit the issue to be revisited after discovery or efforts by the named plaintiff to re-define the contours of the proposed collective action." *Halle*, 842 F.3d at 224–25.