IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| YE MING HUANG, | : | |
| *Plaintiff* | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BAI WEI LLC, | : | No. 22-3618 |
| *Defendant* | : | |

**MEMORANDUM**

PRATTER, J.                                                                                       MAY 13ᵗʰ, 2024

  Ye Ming Huang claims that Bai Wei, LLC, which owned the restaurant where he worked, underpaid him and his co-workers. Individually and on behalf of others similarly situated, Mr. Huang claims that Bai Wei violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the "FLSA"), and the Pennsylvania Minimum Wage Act, 43 Pa. Cons. Stat. § 331.101 *et seq.*, by failing to pay their employees overtime. Mr. Huang has filed a motion for conditional collective certification under 29 U.S.C. § 216(b). Bai Wei has submitted briefing in opposition to Mr. Huang's motion, and the motion is ripe for decision. The Court denies the motion for conditional collective certification, with prejudice, for the reasons set forth below.

BACKGROUND

  Ye Ming Huang worked as a chef at a restaurant in Philadelphia's Chinatown neighborhood from June 2018 to May 2021. According to Mr. Huang's complaint, he worked about 70 hours a week at the restaurant and made a flat rate of about $4,000 to $4,400 per month. He did not have fixed breaks or set mealtimes. When he did get a break, it could be cut short at any time if a customer ordered food. He was never given an hourly pay rate, nor told of tip deductions toward his wages. He alleges that he never received a pay stub. Mr. Huang claims that he and other current

and former non-exempt and non-managerial employees[1] who are or were employed by Bai Wei for the last three years were not properly compensated at one-and-one-half times their promised work for all hours worked in excess of 40 hours per week.

This is the second of two related suits stemming from Mr. Huang's alleged mistreatment at the restaurant. Mr. Huang first filed suit against Sakura Mandarin, Inc.; its owners Jack and Anna Chen; the Chens' other restaurant-operating companies, Chili Bamboo LLC and Dessert Pop, Inc.; and Wen He Wang, a manager at Bai Wei (the "Initial Suit" or "*Sakura Mandarin*"). *See Huang v. Sakura Mandarin, Inc.*, No. 21-cv-3757, 2022 WL 2052646, at *1 (E.D. Pa. June 7, 2022). In the Initial Suit, this Court dismissed Ms. Chen, Chili Bamboo LLC, and Dessert Pop, Inc. as defendants, *id.* at *6, and denied Mr. Huang's motion for conditional collective certification without prejudice, finding that Mr. Huang had provided insufficient information to meet his burden. *Huang v. Sakura Mandarin, Inc.*, No. 21-cv-3757, 2022 WL 4585533, at *3–*5 (E.D. Pa. Sept. 29, 2022).

Shortly after that adverse ruling, Mr. Huang filed this suit against Bai Wei,[2] alleging that Bai Wei (1) violated the FLSA's overtime provision, 29 U.S.C. § 207(a) and (2) violated the

---

[1]  As of this date, no other current or former employees of Bai Wei appear to have opted in to this lawsuit as plaintiffs.

[2]  Although Mr. Huang states in his Complaint that "[t]his matter ought to be consolidated with *Huang v. Sakura Mandarin, Inc*, No. 21-cv-3757," Compl. ¶ 24, he has yet to file a motion to consolidate with the Court. Bai Wei and the remaining defendants in the Initial Suit oppose consolidation, and argue that the Court no longer has subject matter jurisdiction over the remaining claims in *Sakura Mandarin* because Defendant Sakura Mandarin does not meet the definition of an "enterprise" under the FLSA. *See* Oct. 20, 2023 Facsimile Supp. Status Update at 1. Although there is no motion formally raising this issue pending in either case, the Court will briefly address Defendants' argument. *Cf. Bracken v. Matgouranis*, 296 F.3d 160, 162 (3d Cir. 2002) ("[The Court] has a continuing obligation to sua sponte raise the issue of subject matter jurisdiction if it is in question.") (citing *Shaffer v. GTE North, Inc.*, 284 F.3d 500, 502 (3d Cir. 2002)). Courts in this and other Circuits have determined that a failure to establish that the defendant is an enterprise under the FLSA does not deprive the court of subject matter jurisdiction. *See Dong v. Ren's Garden*, No. 09-5642, 2010 WL 1133482, at *4 (D.N.J. March 22, 2010) (collecting cases). Rather, whether defendant meets the gross annual sales requirement to qualify as an enterprise goes to the merits of the claim. *See Jiang v. Lee's Happy House*, No. 07-3606, 2007 WL 3105087, at *2 (N.D. Cal. Oct. 23, 2007); *Rodriguez v. Diego's Rest*, 619 F.Supp.2d 1345, 1350 (S.D. Fla. 2009) ("Nothing in … any … provision of

overtime provisions of the Pennsylvania Minimum Wage Act, 43 Pa. Cons. Stat. §§ 333.105(a)–(c). Mr. Huang moved for conditional certification of an FLSA collective action in the instant suit, Doc. No. 12, and the Court denied that motion without prejudice on August 14, 2023, and instructed Mr. Huang's counsel to make specific corrections to the motion within seven days.[3] Aug. 14, 2023 Mem. Order, Doc. No. 17. Mr. Huang refiled the corrected motion, which seeks certification of a collective action of: "ALL of Defendant's current and former non-exempt and non-managerial employees employed at any time from September 9, 2019 . . . through the date when the Court decides upon this motion[.]" Second Mot. for Conditional Collective Cert. at 1, Doc. No. 19 (emphasis removed). The motion is now ripe for disposition.[4]

## LEGAL STANDARDS

"The FLSA establishes federal . . . overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013). Under § 7 of the FLSA, nonexempt employees working over 40 hours a week must receive compensation at a rate of at least one-and-one-half times his or her regular rate for hours worked above that threshold. 29 U.S.C. § 207(a)(1); *see also id.* § 213(a) (setting forth exemptions to overtime provisions). An employee may bring an FLSA collective action on "behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b); *see also Genesis*, 569 U.S. at 69. Such collective actions provide the benefit of "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165,

---

the FLSA indicates that Congress intended that the individual coverage or enterprise coverage restrictions be jurisdictional."). The Court retains subject matter jurisdiction over *Sakura Mandarin*, irrespective of whether any of the remaining defendants in that case constitute an "enterprise" under the FLSA. The Court will not, however, consider consolidating the actions absent a formal request from Mr. Huang.

[3] The Court found that the motion violated Federal Rule of Civil Procedure 11 because the motion and accompanying filings did not include the signature of an attorney of record. Aug. 14, 2023 Mem. Op. at 6, Doc. No. 16.

[4] The Court decides this motion without oral argument. Fed. R. Civ. P. 78(b).

170 (1989). Collective actions differ from Rule 23 class actions because potential plaintiffs must *opt in* to join a suit proceeding under § 216(b). 29 U.S.C. § 216(b); *see also Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 242–43 (3d Cir. 2013).

"[D]istrict courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs," which "serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." *Hoffman-La Roche*, 493 U.S. at 169, 172. Preliminary certification of a collective action permitting notice "is neither necessary nor sufficient for the existence of a representative action under FLSA." *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 194 (3d Cir. 2011), *rev'd on other grounds*, *Genesis*, 569 U.S. 66.

In the Third Circuit, courts follow a two-step path to collective actions. *Camesi*, 729 F.3d at 243. First, the Court conditionally certifies the action once the named plaintiff has made "a modest factual showing—something beyond mere speculation—to demonstrate a factual nexus between the manner in which the employer's alleged policy affected him . . . and the manner in which it affected the proposed collective action members." *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016) (internal quotation marks omitted). The proposed collective action members then receive notice of the action and have the chance to opt in. *Id.* Discovery carries on, with a focus on the new opt-in plaintiffs. *Id.* at 225–26. "At the step-one inquiry, the Court does not weigh the evidence, resolve factual disputes, or reach the merits of Plaintiff's claims . . . . The Court does not, however, review Plaintiff's evidence in a vacuum. It reviews Plaintiff's evidence in light of the evidence submitted by Defendants." *Reed v. Empire Auto Parts, Inc.*, No. 13-cv-5220, 2015 WL 761894, at *3 (D.N.J. Feb. 23, 2015).

4

Despite being fairly lenient, the modest factual showing standard "does not compel automatic certification at the notice stage." *Mitchell v. Covance, Inc.*, 438 F. Supp. 3d 341, 346 (E.D. Pa. 2020). Rather, the Court is cast "in the role of gatekeeper," "screen[ing] at this early stage overly burdensome litigation" and "ensur[ing] that the notice to be sent out to the putative collective members contains accurate information and is not a naked solicitation of claims." *Mitchell*, 439 F. Supp. 3d at 346; *see also Smith v. Sovereign Bancorp, Inc.*, No. 03-cv-2420, 2003 WL 22701017, at *2–*3 (E.D. Pa. Nov. 13, 2003) (denying motion for preliminary collective certification where grant would result in "an inefficient and overbroad application of the opt-in system, and . . . a substantial and expensive burden on a defendant to provide names and addresses of thousands of employees who would clearly be established as outside the class if the plaintiff were to conduct even minimal class-related discovery").

In the second step of the collective certification process—*i.e.*, final certification—once all the opt-in plaintiffs are identified, the Court considers all the evidence to determine whether the opt-in plaintiffs are actually similarly situated to the named plaintiff. *Halle*, 842 F.3d at 226. "This step may be triggered by the plaintiffs' motion for 'final certification,' by the defendants' motion for 'decertification,' or, commonly, by both." *Camesi*, 729 F.3d at 243. While in the initial step the Court decides whether similarly situated plaintiffs actually exist, in the second step the Court must determine whether the opting in plaintiffs are in fact similarly situated to the named plaintiffs. *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 n.4 (3d Cir. 2012). The named plaintiffs must prove this by a preponderance of the evidence in the final certification stage. *Halle*, 842 F.3d at 226.

5

## DISCUSSION

### I. The Motion to Certify Again Fails to Make the Required Modest Factual Showing

Mr. Huang is the sole named plaintiff in this case, and he seeks to conditionally certify a collective of all current and former non-exempt and non-managerial employees employed by Bai Wei at any time since September 9, 2019. Second Mot. for Conditional Collective Cert. at 1, Doc. No. 19. Mr. Huang's motion implicates only the first step of the collective action certification process, so he is required to make a "modest factual showing" that he and his co-workers at Bai Wei were similarly situated. *Halle*, 842 F.3d at 224. To be similarly situated, employees must be "subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA." *Id.* at 226 (quoting *Zavala*, 691 F.3d at 538).

Mr. Huang claims that he and other employees at Bai Wei "almost all regularly worked overtime, but were paid flat monthly salaries in semi-monthly installments, in cash[.]" Mem. in Supp. of Second Mot. at 8, Doc. No. 19-14. He further alleges that Bai Wei failed to keep records. *Id.* In support of his motion, Mr. Huang submitted a supplemental affidavit,[5] two work schedules for all the kitchen employees, and his pay envelopes. *Id.*

As this Court previously noted in its August 14, 2023 memorandum, Bai Wei's alleged pay practices could count as potential common employer practices in violation of the FLSA. If an employee works more than 40 hours in a week, he must receive overtime pay of one-and-one-half times his hourly salary. 29 U.S.C. § 207(a)(1). And restaurants must keep records of the employee's hours worked (including all overtime hours) and wages paid and deductions taken. 29 U.S.C. § 211(c); 29 C.F.R. § 825.500(c).

---

[5] Mr. Huang also relies on his affidavit submitted in support of the motion for conditional collective certification in the Initial Suit. *See* Mem. in Supp. of Second Mot. at 7–8, Doc. No. 19-14.

However, the critical question at this juncture remains: whether Mr. Huang has made the modest factual showing that he and other Bai Wei employees are similarly situated. The Court now considers the four pieces of evidence Mr. Huang submitted with the instant motion to determine if he cured the deficiencies the Court found in his previous motions.

### A. Mr. Huang's Initial Affidavit

Mr. Huang yet again submits his affidavit from the Initial Lawsuit identifying eight other employees, all of whom are alleged to have worked similar hours as Mr. Huang and other kitchen staff, and four of whom are alleged to have received similar pay as Mr. Huang. He claims he knows that the other employees also worked 70 or more hours a week because he and the others "would arrive and leave at the same time." Huang Initial Aff. ("Initial Aff.") ¶ 31. And he avers, without significant detail, that he knows how much the others were paid because he and the others "talked about how much everyone got paid." Initial Aff. ¶ 32.

Because the Court has already discussed the initial affidavit—and its many defects—in two previous opinions, *see, e.g., Huang v. Sakura Mandarin, Inc.*, No. 21-3757, 2022 WL 4585533, at *3–*5 (E.D. Pa. Sept. 29, 2022), the Court simply notes once again that the initial affidavit is, at most, "an incremental step towards the required proof," Aug. 14, 2023 Mem. Op. at 9, Doc. No. 16.

### B. Mr. Huang's New Supplemental Affidavit

In the August 14, 2023 memorandum denying Mr. Huang's first motion for conditional collective certification, the Court found that, rather than bolster Mr. Huang's motion, the supplemental affidavit submitted with that motion "present[ed] even more problems than those associated with the initial affidavit." Aug. 14, 2023 Mem. Op. at 9, Doc. No. 16. Specifically, the Court determined that the supplemental affidavit was "patently deficient" because it is an

7

uncertified translation and devoid of any indicia of reliability to justify "turn[ing] a blind eye to the 'technical improprieties.'" *Id.* at 10–11 (citing *Lijun Geng v. Shu Han Ju Restaurant Corp.*, No. 18-cv-12220, 2019 WL 4493429, at *16 (S.D.N.Y. Sept. 9, 2019)).

The Court also found that, notwithstanding the "technical improprieties," the substance of the affidavit

> does not show that other workers at Bai Wei are similarly situated to Mr. Huang [because,] [a]lthough the supplemental affidavit provides the full names of at least a dozen members of the kitchen staff, Mr. Huang fails to specify these individuals' positions in the restaurant, or even to aver that they were non-exempt or non-managerial employees who could potentially fall within the proposed collective as Mr. Huang defines it.

*Id.* at 12. The Court observed that the supplemental affidavit did not mention overtime compensation and only made the exceptionally conclusory remark that all workers were compensated in the same manner as Mr. Huang. *Id.*

Mr. Huang purports to resubmit the supplemental affidavit in support of the instant motion—this time, it was apparently translated by someone other than his attorney. *See* Second Supp. Aff. at 16, Doc. No. 19-11. This second supplemental affidavit, however, is longer than the first version by about five pages, and contains factual averments that directly contradict those made in the original supplemental affidavit. *Compare* First Supp. Aff. at ¶13, Doc. No. 13-5 *with* Second Supp. Aff. at ¶ 13, Doc. No. 19-11. There is much about this second supplemental affidavit that is equally, if not more, concerning than the preceding supplemental affidavit. For the reasons provided below, the Court declines to consider this second version of the supplemental affidavit as competent evidence.

"[O]nly admissible evidence may be considered in deciding a motion for conditional class certification under 29 U.S.C. § 216(b) of the FLSA." *Stanislaw v. Erie Indem. Co.*, No. 07-1078, 2009 WL 426641, at *2 (W.D. Pa. Feb. 20, 2009) (collecting cases). Where a declarant, like Mr.

8

Huang, "does not speak and read English . . . the party relying on his English-language declaration must also submit documents sufficient to establish that he understood what he was signing." *Sicom S.P.A. v. TRS Inc.*, 168 F. Supp. 3d 698, 709 (S.D.N.Y. 2016).[6] Such comprehension can be shown in several ways. *Heredia v. Americare, Inc.*, No. 17 Civ. 6219, 2020 WL 3961618, at *4 (S.D.N.Y. July 13, 2020). At least one Court has approved a procedure whereby the Spanish-speaking affiant signed an English affidavit which counsel then translated into Spanish, though that Court also ordered an independent professional translator to create a certified Spanish translation, the accuracy of which was verified by another professional translator. *See, Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 118 (S.D.N.Y. 2011). The declarant may also sign the native-language version of his declaration before the declaration is translated into English. *See Mattis v. Zheng*, No. 05 Civ. 2924, 2006 WL 3155843, at *1 n.1 (S.D.N.Y. Oct. 27, 2006). Or he may sign a separate declaration indicating that the document had been properly translated, provided there is no reason to suspect that the declarant did not understand the declaration or that his counsel acted improperly

---

[6] The Court notes once again that there is a not-insignificant body of caselaw in the U.S. District Court for the Southern District of New York regarding the repeated failure of the law firm representing Mr. Huang—Troy Law, PLLC—to provide translations of submitted evidence in lawsuits brought on behalf of other clients. *See, e.g., Tangtiwatanapaibul v. Tom & Toon Inc.*, No. 17 Civ. 00816, 2018 WL 4405606, at *3 (S.D.N.Y. Sept. 17, 2018) ("Plaintiffs failed to provide proper certification by a translator of [one plaintiff's] assertions of improper conduct by defendants."); *Lijun Geng v. Shu Han Ju Rest. II Corp.*, No. 18-cv-12220, 2019 WL 4493429, at *16 (S.D.N.Y. Sept. 9, 2019) (overlooking "technical improprieties" where plaintiffs did not submit their affidavits "in the affiants' native languages, [but where] the Affidavits [we]re signed by the affiants and were sworn before a notary public"); *Jianjun Chen v. 2425 Broadway Chao Rest., LLC*, No. 1:16-cv-5735, 2019 WL 1244291, at *15 (S.D.N.Y. Mar. 18, 2019) ("Exhibits 21 and 22 to [plaintiffs' counsel's] affidavit are untranslated-handwritten-Mandarin documents which the Court does not accept as evidence.").
   As one court observed: "Troy Law's lack of diligence . . . is not an isolated incident but appears to be part of a pattern that has not gone unnoticed." *Bao Guo Zhang v. Shun Lee Palace Rest., Inc.*, 17-CV-00840, 2021 WL 2414872, at *3 n.1 (S.D.N.Y. June 11, 2021) (collecting cases); *see also Shi Ming Chen v. Hunan Manor Enter., Inc.*, 17 Civ. 802, 2021 WL 2282642, at *3–*8 (S.D.N.Y. June 4, 2021) (refusing to appoint Troy Lay as class counsel and collecting cases featuring Troy Law's repeated "abysmal" conduct).

with regard to the declaration. *See Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628, 634 (S.D.N.Y. 2007).

Mr. Huang's second supplemental affidavit was submitted with an accompanying declaration by someone named Jocelyn Chen, who declares pursuant to 28 U.S.C. §1746 that she is fluent in Mandarin Chinese and English and that she has a "New York State Seal of Biliteracy" from the New York Department of Education. *See* Second Supp. Aff. at 16, Doc. No. 19-11. Ms. Chen does not claim to be affiliated with any professional translation company, nor does she claim that she has received relevant professional training or attained certification as a translator in the Eastern District of Pennsylvania. According to the New York Department of Education's website, the "New York State Seal of Biliteracy" is an award presented to "high school graduates who have attained a high level of proficiency in listening, speaking, reading, and writing in one or more languages, in addition to English."[7] Although a laudable accomplishment, it is not a professional certification—it is a seal on the awarded student's diploma and a medallion worn at graduation.[8]

In her declaration, Ms. Chen states:

> On *August 23, 2023*, I read Ye Ming Huang his affidavit from February 10, 2023, in Mandarin Chinese. Huang, Ye Ming, told me what to change, and what to add, in Mandarin Chinese. I wrote down what he said in English. I then translated the English affidavit back to him the [sic] Chinese language. Ye Ming Huang told me that he fully comprehends the contents of the document. Ye Ming Huang signed it as it was translated to him in Mandarin Chinese, and confirmed the truth and accuracy of each statement in the Supplemental Affidavit in Support of Plaintiff's Motion for Conditional Collective Certification in Mandarin Chinese.

---

[7] *NYS Seal of Biliteracy*, New York State Educ. Dep't (Oct. 27, 2016), https://www.nysed.gov/world-languages/news/nys-seal-biliteracy

[8] *What is the New York State Seal of Biliteracy?* New York State Educ. Dep't, https://www.nysed.gov/world-languages/new-york-state-seal-biliteracy-nyssb (last updated Sept. 18, 2023).

*Id.* (emphasis added). Ms. Chen's declaration is dated August 22, 2023, and the notary's[9] stamp is likewise dated August 22, 2023. *Id.* Additionally, some unknown person made hand-edits to correct Ms. Chen's misspelled name. *Id.* On the page preceding Ms. Chen's declaration, Mr. Huang avers in his own declaration—which is written in a language he apparently does not speak—that Ms. Chen (whose name is again misspelled and hand-corrected) assisted him with this new supplemental affidavit on *August 23, 2023. Id.* at 15; *Cf. Tom & Toon Inc.*, 2018 WL 4405606, at *3 (refusing to consider affidavit where non-English-speaking affiant's declaration written in English and not accompanied by translation).

Mr. Huang's declaration is dated August 22, 2023, as is the notary's stamp. *Id.* The Court will also note that this supplement affidavit was docketed on August 22, 2023—a full day prior to the date on which all of this translating allegedly occurred. *See id.* (docketing stamp reflecting filing date of "08/22/23"). Finally, and perhaps most troubling, Mr. Huang's purported signature on this second supplemental affidavit is markedly different from those appearing on the preceding affidavits—in fact, all three signatures differ significantly in spelling and handwriting style. *See* Resp. in Opp., Ex. A, Doc. No. 22 at 24 (side-by-side comparison of the three signatures attributed

---

[9] The person who purportedly notarized the declaration and the affidavit itself is Mr. Aaron B. Schweitzer, who is Mr. Huang's attorney-of-record in the Initial Case (*Sakura Mandarin*) but was denied *pro hac vice* admission twice in this case. *See* Second Supp. Aff. 15–16, Ex. 10, Doc. No. 19-11; *see also* Doc. Nos. 20, 27; *Cf. Jianjun Chen v. WMK 89th Street*, 1:16-cv-5735, 2020 WL 2571010, at 10 (S.D.N.Y. May 20, 2020) (imposing sanctions against Mr. Schweitzer and other Troy Law attorneys for "play[ing] far too fast and loose with their ethical and professional responsibilities during the pendency of [that] litigation.").

Mr. Schweitzer has a pecuniary interest in the outcome of Mr. Huang's case because Mr. Schweitzer's firm has a lien to recover 40% of court awards. *See* Doc. No. 1-1. As such, his signature is not valid under Pennsylvania law. *See* Revised Uniform Law on Notarial Acts, 57 Pa. Cons. Stat. §304(b) ("A notarial officer may not perform a notarial act with respect to a record in which the notarial officer or the notarial officer's spouse has a direct or pecuniary interest."). Mr. Schweitzer's notarization is also invalid under New York law because he does not state "the venue of the act[.]" N.Y. Exec. § 137; *see* Second Supp. Aff. at 15, Doc. No. 19-11. Therefore, as far as the Court (and the law) is concerned, Mr. Huang's affidavit and declaration, and Ms. Chen's declaration, are unnotarized.

to Mr. Huang).[10] In sum, this second supplemental affidavit is, like those before it, patently deficient and not competent evidence.

Given that the Court struggles to find *any* indicia of reliability here, and that this is Mr. Huang's third attempt to submit a valid affidavit, the Court will once again decline to turn a blind eye to the "technical improprieties" of the affidavit. *Cf. Lijun Geng,* 2019 WL 4493429, at *16. The Court disregards Mr. Huang's second supplemental affidavit.

### C. Bai Wei's Work Schedules

Mr. Huang again provides the Court with two charts, which he asserts are Bai Wei staffing schedules for the first two weeks of the months of May and September in an unspecified year. *See* Second Mot. for Conditional Collective Cert., Ex. 11 at 1–2, Doc. No. 19-12. The actual charts themselves are written in Mandarin Chinese, and therefore must be accompanied by certified translations in English. *See Sicom S.P.A.*, 168 F. Supp. 3d at 709 ("[T]he parties . . . should bear in mind that foreign-language documents . . . cannot be reviewed or relied on by the Court, even if otherwise properly authenticated in the declaration to which they are attached, unless they are accompanied by certified translations in English."); *Jianjun Chen v. 2425 Broadway Chao Restaurant, LLC*, No. 16-cv-5735, 2019 WL 1244291, at *15 & n.10 (S.D.N.Y. Mar. 18, 2019) (refusing to accept as evidence, at the summary judgment stage, "untranslated-handwritten-Mandarin documents" where "[n]o translations of these documents, certified or otherwise, were submitted" and remarking that "counsel's lassitude in presenting such untranslated records to the Court is of considerable concern").Mr. Huang purports to attach to the schedules such a translation,

---

[10] Of course, these differences in spelling and handwriting style could be explained by the fact that Mr. Huang is writing out his name phonetically in a language that he does not speak, read, or write, and that differs significantly in form from his native, logographic, language of Mandarin Chinese. But such an explanation would only further justify the Court's insistence on scrutinizing the second supplemental affidavit and accompanying declarations for "indicia of reliability" and technical propriety—the Court must be confident that Mr. Huang understood what he was attesting to. *See Sicom,* 168 F. Supp. 3d at 709.

but that translation was "provided" by Ms. Chen, whose declaration features many of the same troubling "technical improprieties" as the one attached to Mr. Huang's second supplemental affidavit. *See* Second Mot. for Conditional Collective Cert., Ex. 11 at 6, Doc. No. 19-12.

Notwithstanding the deficiency of the "certified translation," these alleged schedules fail to independently establish that Mr. Huang's coworkers were similarly situated. At the most, these schedules show that members of the kitchen staff all worked six *days* a week at some point in some unspecified year. Although one of the schedules allegedly sets out the expected working hours, neither schedule tracks the hours each person worked on each of these days. Therefore, these schedules shed almost no light on whether other Bai Wei employees might be entitled to recover overtime compensation under 29 U.S.C. § 207(a)(1) for the time period designated in Mr. Huang's motion.

### D. Mr. Huang's Pay Records

Finally, Mr. Huang has once again provided what he labels "pay records," which appear to be scans of bank envelopes containing his biweekly cash payments from Bai Wei and photographs of dollar bills, each with what the Court assumes are notes in Mandarin Chinese affixed thereto. Again, Mr. Huang has submitted a translation of these notes purportedly provided by Ms. Chen— her declaration for this translation is again marred by technical improprieties. *See* Second Mot. for Conditional Collective Cert., Ex. 12 at 43, Doc. No. 19-13 (hand-written edits to Ms. Chen's name and deficient notarization by Mr. Schweitzer).

Leaving aside these improprieties, the "pay records" still do not enlighten the Court as to whether other workers at Bai Wei are similarly situated to Mr. Huang. As the Court previously held, these are merely Mr. Huang's memorialization of how he *himself* was paid. Aug. 14, 2023

Mem. Op. at 14, Doc. No. 16. Mr. Huang has provided zero competent evidence of how any of his coworkers were paid.

Mr. Huang has once again failed to make the modest factual showing required for conditional certification.[11] The Court denies Mr. Huang's motion with prejudice.[12]

## CONCLUSION

For the foregoing reasons, the Court denies Mr. Huang's motion for conditional collective certification with prejudice. An appropriate order follows.

BY THE COURT:

/s/ *Gene E.K. Pratter*

**GENE E.K. PRATTER**
**UNITED STATES DISTRICT JUDGE**

---

[11] After being informed of the impending denial of the instant motion, counsel for Mr. Huang stipulated on the record that there is no evidentiary basis to support class certification under Federal Rule of Civil Procedure 23. May 9, 2024 Hr'g Rough Tr. at 13:8–14:5; 19:21–24.

[12] Because the Court denies the motion, the Court need not address any arguments as to the sufficiency or appropriateness of Mr. Huang's proposed notice. *See Xin Li*, 2020 WL 468344, at *1 n.3.